AMERICAN NATIONAL INSURANCE COMPANY and Heart of Texas Dodge, Appellants,

v.

Rosemary PAUL and Don Paul, Appellees.

No. 03–95–00525–CV.

Court of Appeals of Texas, Austin.

July 17, 1996.

Rehearing Overruled Aug. 14, 1996.

Thomas W. McQuage, Greer, Herz & Adams, Galveston, Donna Gregg, Law Offices of Jim Dear, P.C., Austin, for Appellants.

Doug Young, Scanlan, Buckle and Young, P.C., Austin, for Appellees.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

ABOUSSIE, Justice.

The opinion issued by this Court on June 12, 1996, is withdrawn and the following opinion is substituted in its place.

Appellees Rosemary and Don Paul sued appellants American National Insurance Company ("American National") and Heart of Texas Dodge ("Dodge") in district court. The Pauls alleged that American National breached a credit disability insurance contract and that American National and Dodge engaged in unfair and deceptive business and insurance practices. *See* Tex.Ins.Code Ann. arts. 21.21, 21.55 (West Supp.1996); Tex.Bus. & Com.Code Ann. § 17.50 (West Supp.1996). Dodge filed a counterclaim against the Pauls alleging that their claims were groundless and without merit. *See* Tex.Ins.Code Ann. art. 21.21, § 16(c) (West Supp.1996). Following a bench trial, the court rendered judgment in favor of the Pauls.

## BACKGROUND

On February 16, 1993, the Pauls purchased a van from Dodge. Before this date, Mr. Paul negotiated the purchase terms of the van with one of Dodge's agents. Mr. Paul asked the sales agent whether the purchase price included credit disability insurance. The agent responded that he did not know. Beyond this inquiry there was never any discussion of whether credit disability insurance was to be included in the transaction.

On the day of the purchase, the Pauls arrived at the car dealership during Mrs. Paul's lunch hour in order to meet the finance officer and close the deal. After waiting a short while, the Pauls informed a Dodge agent that they were in a hurry for Mrs. Paul to return to work and that if they could not meet with a finance agent soon, they would have to return later. Shortly thereafter the Pauls met with the finance agent who prepared the documents for a 72-month financing term for the van purchase. The documents also contained an application for credit disability insurance to be provided by American National, and the total purchase price included premium payments for this coverage. Chrysler Credit Corporation ("Chrysler Credit") was to provide financing for both the van purchase and the premium for the credit disability insurance.

The finance agent did not orally disclose the existence of the credit insurance application to the Pauls. The Pauls did not read the paperwork, and they signed all the documents where instructed by the finance agent. Consequently, the Pauls were unaware that they were purchasing credit disability insurance.

The insurance application contained a paragraph entitled "Applicant's Statement," which required the applicant to state that she was in good health and had not within the last three years consulted a doctor for certain conditions, including treatment of the nervous system. Mrs. Paul signed the statement even though at the time she suffered from amyotrophic lateral sclerosis, commonly known as "Lou Gehrig's Disease," a terminal and degenerative illness affecting the nervous system. She had consulted a doctor

regarding her condition within the last three years. The trial court found that, in signing the statement, the Pauls did not intend to deceive or induce American National into issuing the policy.

As of April 1, 1994, Mrs. Paul became totally and permanently disabled and was unable to continue working. On May 5, 1995, pursuant to the credit disability insurance policy, she applied for disability insurance benefits, which American National denied. When American National discovered her condition, they refunded the premium payment to Chrysler Credit which in turn was to refund it to the Pauls.

The Pauls filed suit against American National and Dodge alleging violations of the Deceptive Trade Practices Act, the Insurance Code, and breach of contract. *See* Tex.Ins. Code Ann. arts. 21.21, 21.55 (West Supp. 1996); Tex.Bus. & Com.Code Ann. § 17.50 (West Supp.1996). Dodge counterclaimed against the Pauls, alleging that their Insurance Code article 21.21 claims against it were groundless and seeking attorney fees. *See* Tex.Ins.Code Ann. art. 21.21, § 16(c) (West Supp.1996).

Following a bench trial, the trial court rendered judgment in favor of the Pauls on their breach of contract claim against American National in the amount of $18,317.68, representing the present value of the payments remaining on the van, plus any premium payments made after the claim was denied, less any premium payments already refunded. The court also rendered judgment that, pursuant to article 21.21, section 6 of the Texas Insurance Code, the Pauls recover $557.55 interest from American National on the amount of the denied claim.

Furthermore, the court found that the finance agent was a dual agent for both American National and Dodge and that he engaged in an unfair or deceptive act or practice in the business of insurance. Therefore, the court ruled that the Pauls were entitled to recover from American National and Dodge, jointly and severally, $5,000 dollars in emotional distress damages pursuant to section 17.50 of the Texas Business and Commerce Code and article 21.21, section 6 of the Texas Insurance Code. Fi-

nally, the court determined that American National and Dodge were jointly and severally liable for the Pauls' reasonable and necessary attorney's fees pursuant to section 17.50 of the Texas Business and Commerce Code, articles 21.21 and 21.55 of the Texas Insurance Code, and section 38.001(8) of the Texas Civil Practice and Remedies Code. American National and Dodge appeal the trial court's judgment.

## DISCUSSION

### Contract Claim

In its first point of error, American National claims that the trial court erred in finding that it had entered into a binding insurance contract with the Pauls because Mrs. Paul failed to fulfill a condition precedent. American National contends that, under the Applicant's Statement, Mrs. Paul's good health constituted a condition precedent to the insurance contract. It is undisputed that, when she signed the application, Mrs. Paul had consulted a doctor within three years concerning her nervous system and knew that she was suffering from Lou Gehrig's disease. Accordingly, American National argues that Mrs. Paul failed to fulfill a condition precedent and that therefore the contract was never effectively consummated. The Pauls respond that the Applicant's Statement was merely a representation, not a condition precedent.

In order to rescind the contract due to an insured's misrepresentation, the insured must have made the misrepresentation *with the intent to deceive. Mayes v. Massachusetts Mut. Life Ins. Co.,* 608 S.W.2d 612, 616 (Tex.1980). The trier of fact found that the Pauls did *not* misrepresent Mrs. Paul's health condition with the intent to deceive. The appellants have not challenged this factual finding. Therefore, the Pauls argue, American National cannot disavow the contract based on any alleged misrepresentation by Mrs. Paul. *See Wilson v. Texas Parks & Wildlife Dep't,* 853 S.W.2d 825, 832 (Tex. App.—Austin 1993), *rev'd on other grounds,* 886 S.W.2d 259 (Tex.1994) (unchallenged factual findings binding on appeal). We agree. Therefore, we must determine whether the

Applicant's Statement was a condition precedent.

▮ Where the language of the policy expressly provides that coverage does not take effect unless the applicant is in good health, the good health provision is enforceable as a condition precedent. *See, e.g., American Nat'l Ins. Co. v. Lawson,* 133 Tex. 146, 127 S.W.2d 294, 295 (Tex.Comm.App.1939, opinion adopted). However, where the language in the policy states that the answers in the application are true and correct at the time of delivery of the policy, such a requirement is merely a representation. *See Mayes,* 608 S.W.2d at 616.

The Applicant's Statement portion of the credit disability insurance contact provided in pertinent part:

I hereby apply to the Company for insurance in the amount of and for the terms as stated in the Schedule. I declare that to the best of my knowledge and belief, I am in good health and that my age is as stated above. During the past three years I have not received any medical care or treatment for heart, lungs, or respiratory system, brain or nervous system, Immune Deficiency Disorder, AIDS or the AIDS Related Complex (ARC), or cancer to any part of the body. If I have consulted a physician within the past three years for any conditions listed above, I will not be eligible to obtain credit insurance with respect to my loan.

American National concedes that the second sentence in the Applicant's Statement is merely a representation. However, American National argues that the third and fourth sentences taken together evidence a condition precedent because they relate to the "effectiveness" of the contract. We disagree.

▮ When the language of an insurance policy is susceptible to more than one construction, the insurance policy should be construed in favor of the insured to avoid exclusion of coverage. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987). Exceptions and rules of limitation will be construed

strictly against the insurer. *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977). Moreover, the courts should not construe policies piecemeal. When construing a particular provision in an insurance policy, all of the policy's provisions should be given effect, and the whole of the contract considered, with each clause being used to help interpret the other. *Decorative Ctr. v. Employers Casualty Co.,* 833 S.W.2d 257, 260 (Tex.App.—Corpus Christi 1992, writ denied).

▮ The Applicant's Statement does *not* provide that it will not take effect unless the applicant is in good health. Instead, it merely states that Mrs. Paul's eligibility is a function of her good health. Considering the paragraph as a whole, the third and fourth sentences merely evidence that the applicant recognizes the consequences of any misrepresentation about her health. Moreover, a further reading of the policy supports the conclusion that the Applicant's Statement is merely a representation and not a condition precedent.

The portion of the contract entitled "What You Get" states when the policy takes effect. This section expressly provides that the policy takes effect when the first premium has been paid and does not mention any other condition precedent. Furthermore, an examination of the "What We Won't Pay" section of the contract evidences that the applicant's good health is not a condition precedent. This portion of the contract expressly establishes the policy's limitations and exclusions and contains the following condition precedent: "[I]f your age is misstated and you have reached age 66 on the Effective Date, no insurance under this policy will take effect and our liability shall be limited to a refund of all premiums paid."[1] The policy does not mention the applicant's health.

In sum, a reading of the entire policy evidences that the Applicant's Statement is merely a representation and not a condition precedent. Therefore, because appellants have not challenged the trier of fact's finding

1. This clause is a condition precedent because of the "will not take effect language." *See Lawson,*

127 S.W.2d at 295.

that the Pauls did not misrepresent Mrs. Paul's physical condition with the intent to deceive, American National was not entitled to disavow the contract. We overrule American National's first point of error.

In its second point of error, American National claims that the trial court erred in finding that American National had entered into a binding insurance contract with the Pauls because there was never a mutual assent to the terms of an insurance contract. American National argues that, in order to form a binding agreement, both parties must mutually agree to the terms of the contract. *See Republic Nat'l Life Ins. Co. v. Hall,* 149 Tex. 297, 232 S.W.2d 697, 699 (1950). American National notes that the evidence undisputedly showed that the Pauls never read the insurance disability credit insurance policy application. Therefore, according to American National, the evidence is legally and factually insufficient to prove that the parties mutually assented to form an insurance contract.

■ American National is correct that in order to form a binding contract, the parties must mutually assent to its terms. American National urges that the Pauls' failure to read the contract evidenced a lack of a meeting of the minds because they could not have assented to terms of which they were unaware. However, American National's argument presupposes that the parties' mutual assent is to be *subjectively* determined. On the contrary, "[t]he determination of whether there was a meeting of the minds must be based on objective standards of what the parties said and did and not on their alleged subjective states of mind." *Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 717 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *see also Argonaut Ins. Co. v. Allstate Ins. Co.,* 869 S.W.2d 537, 540 (Tex.App.—Corpus Christi 1993, writ denied); 14 Tex.Jur.3d *Contracts* § 60 (1981).

■ When deciding a no-evidence point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.,*

786 S.W.2d 670, 671 (Tex.1990). We will uphold the finding if more than a scintilla of evidence supports it. *Crye,* 907 S.W.2d at 499; *Seideneck v. Cal Bayreuther Assocs.,* 451 S.W.2d 752, 755 (Tex.1970); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Crye,* 907 S.W.2d at 499; *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994); William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515, 522 (1991). When reviewing a fact finding to the determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 244 S.W.2d at 661; *see Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *see* William Powers, Jr. & Jack Ratliff, *supra.*

■ In the instant cause the evidence is legally and factually sufficient to show that American National and the Pauls, according to an objective standard, mutually assented to the terms of the credit disability insurance contract. When objectively viewed, by presenting to the Pauls a van purchase contract that included an application for credit disability insurance, American National's agent made them an offer on a credit disability insurance contract. In turn, when objectively viewed, by signing the written contract and paying the premiums on the policy, the Pauls accepted American National's offer. Therefore, we cannot say that there is no evidence to support the trial court's finding that a binding contract existed. Moreover, we cannot say that such a finding is against the great weight and preponderance of the evidence or is clearly wrong or unjust. We overrule American National's second point of error.

*DTPA and Article 21.21 Claims*

In American National's third and Dodge's first and second points of error, both appel-

lants contend that the evidence was legally and factually insufficient to support the trial court's award of mental anguish damages. More specifically, appellants argue that the trial court erred in awarding mental anguish damages when the Pauls failed to plead, prove, or obtain a finding that appellant acted "knowingly" in their allegedly deceptive conduct.

■ In order to recover mental anguish damages under DTPA or article 21.21 causes of action, in the absence of a resulting physical injury, a plaintiff must show that the defendants committed the acts with a heightened culpable mental state. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 435 (Tex.1995). In the instant cause there was no resulting physical injury; therefore, to prevail on their claims, the Pauls were required to demonstrate that appellants committed the acts with a heightened culpable mental state.

■ The requisite culpable mental state to support mental anguish damages under article 21.21 is "knowing," defined as an "actual awareness of the falsity, unfairness or deception of the act. . . ." *Id.* at 436. Likewise, in order to support mental anguish damages under the DTPA, one must show a willful tort, gross negligence, willful disregard, or a knowing violation. *Id.* at 435.

The Pauls concede on appeal that they never pleaded a heightened culpable mental state. Moreover, the trial court did not include such a finding in its findings of fact. The Pauls argue that the failure to plead a heightened culpable mental state can be overcome because the issue of a "knowing" violation was tried by consent. Additionally, the Pauls argue that the lack of a finding can be cured by a deemed finding in support of the judgment. We shall first consider the issue of a deemed finding.

After a bench trial, the trial court rendered judgment awarding the Pauls five thousand dollars in mental anguish damages. At appellants' request, the trial court filed findings of fact and conclusions of law. While the trial court found that appellants had committed acts in violation of the DTPA and article 21.21, it failed to find that appel-

lants committed these acts knowingly or with any other form of heightened culpable mental state. Appellants filed a motion for new trial, apprising the trial court that the evidence was insufficient to support an award of mental anguish damages, thereby preserving their complaint for appeal. *See* Tex.R.App.P. 52(a).

■ In a bench trial, when the complaining party fails to request findings of fact and conclusions of law and the trial court files none, all questions of fact are presumed by the appellate courts to be found in support of the judgment. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986). However, as in the instant cause, where the parties requested and the court filed findings of fact, omitted findings can only be presumed when (1) an element of the ground of recovery was included in the findings of fact; (2) the omitted element has not been properly requested; and (3) the omitted finding is supported by the evidence. Tex.R.Civ.P. 299; *Tarrant County Water Control and Improvement Dist. v. Haupt, Inc.*, 854 S.W.2d 909, 913 (Tex.1993); *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex.1985); 30 Jeremy C. Wicker, Civil Trial and Appellate Practice § 264 (Texas Practice 1985 & Supp.1995). The trial court found that appellants committed acts in violation of both the DTPA and article 21.21. Therefore, the trial court made findings on at least one element of both the DTPA and article 21.21 theories of recovery. Furthermore, the parties did not request a finding on the issue of a heightened culpable mental state. As such, in order to presume an omitted finding on the issue of a "knowing" violation, the record evidence must support such a finding. *Id.*

■ As applied to the instant cause, in order to support a deemed finding, the evidence must demonstrate that appellants "knowingly" committed the allegedly deceptive acts, where "knowing" is an "actual awareness of the falsity, unfairness or deception of the act." *See Beaston*, 907 S.W.2d at 436. In other words, the appellants must have offered the Pauls credit disability insurance knowing that the Pauls did not want it.

The record reveals that (1) the Pauls were unaware that credit disability insurance was part of the van purchase contract, and (2) the Pauls would have purchased the van, but not the insurance, had they known about the insurance policy. However, the evidence does not suggest that appellants knew that the Pauls did not want the insurance and thereby intended to deceive them. In fact, the day before purchasing the van, Mr. Paul asked the sales agent whether the price included credit disability insurance. The sales agent was unsure. When the Pauls met with the finance agents, they indicated that they were in an enormous rush. Because (1) Mr. Paul expressed an interest in the insurance the day before the purchase, and (2) the Pauls, in their haste, did not express that they did not want the insurance, the evidence cannot be said to prove that appellants offered an insurance policy which they knew the Pauls did not want. Therefore, there can be no deemed finding of "knowing" misconduct. See Tex.R.Civ.P. 299. Accordingly, the mental anguish damages cannot stand. See Beaston, 907 S.W.2d at 435.

Moreover, to obtain an award of attorney's fees under the DTPA or article 21.21, one must first recover actual damages. Beaston, 907 S.W.2d at 437. Because we reverse the award of mental anguish damages awarded under the DTPA and article 21.21, no attorney's fees may be awarded under those grounds of recovery. Id. According to the final judgment, Dodge was liable only for mental anguish damages and attorney's fees based on the DTPA and article 21.21 violations. Because we reverse the mental anguish damages, we must also reverse the attorney's fees awarded against Dodge. The attorney's fees awarded against American National, however, were also premised upon the Pauls' contract claim, which remains undisturbed on appeal. Tex. Civ.Prac. & Rem.Code Ann. § 38.001(8) (West 1986) (attorney's fees recoverable upon successful contract claim). Therefore, because there exist alternative grounds to support the award of attorney's fees against American National, we affirm the award of attorney's fees against American National. With this in mind, we sustain American Na-

tional's third and Dodge's first and second points of error.

American National's remaining points of error challenge the judgment's award of mental anguish damages under the DTPA and article 21.21. Because we have already reversed the judgment's award under those grounds of recovery, we need not address these remaining points of error.

## CONCLUSION

We hold that the record contains no evidence to support a deemed finding on the heightened culpable mental state required to support an award of mental anguish damages under the DTPA or article 21.21. Consequently, we also hold that there can be no award of attorney's fees based on those grounds of recovery. Therefore, we reverse that portion of the judgment awarding mental anguish damages of five thousand dollars, both against American National and Dodge. We also reverse that portion of the judgment awarding attorney's fees against Dodge. We further render judgment that appellees take no mental anguish damages against American National and take nothing against Dodge. We affirm the remainder of the judgment.