TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








ON MOTION FOR REHEARING









NO. 03-99-00268-CV







Texas District Lutheran Church-Missouri Synod; The Lutheran Foundation of


Texas; Gerald Bryan Kieschnick; Glenn Pittsford; Glenn O'Shoney;


and The Lutheran Church-Missouri Synod, Appellants



v.



Federal Insurance Company, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 96-09791, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING








 The opinion and judgment issued herein on March 23, 2000 are withdrawn and the
following opinion is substituted for the earlier one.

 Texas District Lutheran Church-Missouri Synod, the Lutheran Foundation of
Texas, Gerald Bryan Kieschnick, Glenn Pittsford, Glenn O'Shoney, and the Lutheran Church-Missouri Synod (collectively, "Lutherans") sued Federal Insurance Company ("Federal") seeking
reimbursement of defense costs incurred and settlement payments made in two underlying
lawsuits. The trial court granted summary judgment in favor of Federal, holding that neither the
"Fiduciary Liability Coverage" nor "Executive Liability and Indemnification Coverage" section
of the Federal policy purchased by Lutherans provided coverage. We will affirm the judgment
as to the Fiduciary Liability section. Because we conclude that the exclusion on which Federal
relies is not triggered by the wrongful acts of which Lutherans were accused, we will reverse in
part the trial court's summary judgment and remand that portion of the cause for further
proceedings.


FACTUAL AND PROCEDURAL BACKGROUND


 The Lutheran Church-Missouri Synod obtained an Executive Protection insurance
policy from Federal, effective April 1, 1994. The policy contains four discrete sections, two of
which are relevant here. (1) The Fiduciary Liability Coverage section provides $10 million coverage
to the Lutheran Church-Missouri Synod and its constituent operating units and includes a duty to
defend against covered claims. The Executive Liability and Indemnification Coverage section
provides up to $10 million coverage on behalf of the Lutheran Church-Missouri Synod, its
districts, or the Lutheran Foundation of Texas for acts and omissions of certain officers and
directors, but does not include a duty to defend against such claims.

 A coverage dispute arose under the policy about costs incurred and payments made
by Lutherans in the defense and settlement of two underlying lawsuits. In the summer of 1994,
Lutherans notified Federal that they had been sued in state court by the Estate of Louise Peter. (2) 
The suit alleged that Lutherans had insinuated themselves into the confidence of the elderly Peter
and wrongfully pressured her into transferring control of her estimated $2 million estate to
Lutherans. In doing so, Lutherans allegedly offered financial and estate-planning advice that they
were not qualified to give.

 In 1988, Peter established a living trust and named the Lutheran Foundation as
trustee. In 1990, she created a Charitable Remainder Unitrust and again named the Lutheran
Foundation as trustee. Affiliated Lutheran entities were named remainder beneficiaries of both
trusts upon Peter's death. At the urging of certain Lutheran executives, Peter executed other legal
documents transferring property--including two homes and eleven other tracts of real property--to
the trusts. Lutherans also allegedly induced Peter to purchase two $100,000 charitable annuities
from the Lutheran Foundation, the remainders of both to pass to affiliated Lutheran entities on
Peter's death. The lawsuit alleged that Lutherans mismanaged these trusts and annuities, which
contained the bulk of her assets.

 Shortly after the state lawsuit was initiated, another lawsuit was filed on Peter's
behalf in federal court. The federal suit contained both individual claims--which were almost
identical to the claims brought in the state court lawsuit--and class action claims against
approximately thirty charitable entities, including Lutherans. In the class action, Peter claimed
to represent a class of persons like herself who had been coerced into donating money or other
assets to charitable organizations. Peter's state court suit settled in July 1996, as did Peter's
individual federal claims. The class action claims were not resolved.

 After being notified of Peter's lawsuits, Federal denied Lutherans coverage and
accordingly refused to defend Lutherans in the litigation. Lutherans in turn filed this action,
alleging, among other claims, that Federal's denial of coverage constituted a breach of contract. 
The parties first filed competing motions for summary judgment on the Fiduciary Liability
Coverage section of the policy. The trial court granted Federal's motion for partial summary
judgment, ruling that the allegations leveled against Lutherans in the underlying lawsuits did not
constitute "Wrongful Acts" as defined in that section of the policy and thus were not covered
under that section. The parties then filed motions for summary judgment on the Executive
Liability Coverage section of the policy. The trial court again ruled in favor of Federal, ruling
as a matter of law that an exclusion in that section precluded coverage; the court rendered a final
summary judgment in Federal's favor, thus disposing of all of Lutherans' claims. Lutherans
perfected this appeal, asserting that the policy terms are ambiguous and should therefore be
construed in favor of coverage. They ask us to reverse the trial court's grant of summary
judgment in favor of Federal, grant their own motion for summary judgment, and hold that
coverage is provided under either the Executive Liability or the Fiduciary Liability section of the
policy.


DISCUSSION


 Where, as here, both sides move for summary judgment and the trial court grants
one motion and denies the other, we review the summary judgment evidence presented by both
sides and determine all questions presented. See Commissioners Court v. Agan, 940 S.W.2d 77,
81 (Tex. 1997). If we find error, we then render the judgment that the trial court should have
rendered. See id.


Fiduciary Liability Coverage Section

 We turn first to Lutherans' claim that the Fiduciary Liability section of the policy
covers the liability and expenses incurred in defending and settling Peter's claims against
Lutherans. The insuring clause of the Fiduciary Liability section provides:


The Company shall pay on behalf of each of the Insureds all Loss for which the
Insured becomes legally obligated to pay on account of any Claim first made
against the Insured during the Policy Period or, if exercised, the Extended
Reporting Period, for a Wrongful Act committed, attempted, or allegedly
committed or attempted, before or during the Policy Period by an Insured or by
any person for whose Wrongful Acts the Insured is legally responsible.



The bold-type, capitalized words are all defined in the "Definitions" section of the policy. 
"Wrongful Act" is defined therein as follows:


Wrongful Act means:


(a) with respect to a Sponsored Plan,


 (i) any breach of the responsibilities, obligations or duties imposed upon
fiduciaries of the Sponsored Plan by the Employee Retirement Income
Security Act of 1974, as amended, or by the common or statutory law
of the United States, or any state or other jurisdiction anywhere in the
world;


 (ii) any other matter claimed against the Sponsor Organization or an
Insured Person solely because of the Sponsor Organization's or the
Insured Person's service as a fiduciary of any Sponsored Plan; or


 (iii) any negligent act, error or omission in the Administration of any
Sponsored Plan; and


(b) with respect to an Insured Plan,


 (i) any negligent act, error or omission in the Administration of any
Insured Plan.


(c) any negligent act, error or omission in the Administration of any Benefit
Program. (3)



 There is no dispute that the claims in the underlying lawsuit did not involve the
administration of any kind of employee benefit program. Thus, the dispositive issue is whether
the foregoing definition restricts coverage under the Fiduciary Liability section to fiduciary
misconduct arising in the administration of such plans. Lutherans claim that the language in the
insuring clause is broad and that the activities their fiduciaries are accused of engaging in are
covered by the language that purports to insure against "all Loss for which the Insured becomes
legally obligated to pay . . . for a Wrongful Act committed . . . by an Insured or by any person
for whose Wrongful Acts the Insured is legally responsible." Federal counters that the broad
language of the insuring clause is limited by reference to the defined terms and that the term
"Wrongful Act" is defined so that it applies only to two types of employee benefit plans: 
"Sponsored Plans" and "Insured Plans." Lutherans respond that the scope of the defined term
is ambiguous.

 In general, the interpretation of insurance contracts is governed by the same rules
of construction as other contracts. See Balandran v. Safeco Ins. Co., 972 S.W.2d 738, 740-41
(Tex. 1998); Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). Our primary goal
is to read all parts of the contract together and give effect to the written expression of the parties'
intent. See Balandran, 972 S.W.2d at 741; Forbau, 876 S.W.2d at 133. If, after applying these
rules, a contract is subject to two or more reasonable interpretations, it is ambiguous. See
Balandran, 972 S.W.2d at 741; Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940
S.W.2d 587, 589 (Tex. 1996).

 In one respect, however, insurance contracts are different from other contracts. 
In other contracts ambiguous language generally creates a fact question, but with insurance
policies a presumption exists in favor of coverage; we therefore construe ambiguities against the
carrier and in favor of the insured. See State Farm Fire & Cas. Co. v. Reed, 873 S.W.2d 698,
701 (Tex. 1993). That is, if both the insurer and the insured offer reasonable interpretations of
a policy, we must resolve the ambiguity in favor of the construction that provides coverage to the
insured. See Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987); American Nat'l
Ins. Co. v. Paul, 927 S.W.2d 239, 243 (Tex. App.--Austin 1996, writ denied). In the present
case, this presumption of coverage arises only if we deem Lutherans' interpretation of this section
of the policy reasonable, for not every difference in the interpretation of an insurance policy
amounts to an ambiguity. See Forbau, 876 S.W.2d at 134.

 Lutherans contend that while "Wrongful Act" is specifically defined in this section
of the policy "with respect to" breaches of fiduciary duty arising in the context of employee
benefit plans, nothing in the policy indicates that the definition is intended to be exclusive. If
Federal intended the definition of "Wrongful Act" to be exclusive, the insurer merely had to
include a clause to that effect. Absent such language, Lutherans argue, it is reasonable to assume
that the defined terms are inclusive. As a consequence, Lutherans assert that the policy can be
read to include other, undefined "Wrongful Acts." When the plain language of the policy is
scrutinized, we cannot agree that the Fiduciary Liability section covers liability for "Wrongful
Acts" beyond those specifically defined in the policy.

 In arguing that the definition of "Wrongful Act" should be construed as inclusive
and not exclusive, Lutherans rely heavily on the phrase "with respect to" as it is used in sections
(a) and (b) of the definition to reference Sponsored and Insured Plans. While the definition begins
"Wrongful Act means," which seems to signify the exclusivity of the definition, it goes on to offer
two partial definitions that are limited by use of the phrase "with respect to." Lutherans contend
Federal's use of the phrase in drafting the policy shows that Federal contemplated that "Wrongful
Act" was intended to have an undefined meaning outside the context of Sponsored and Insured
plans. During oral argument and in their post-submission brief, Lutherans offered an analogy to
exemplify how a term might be given a definition that would apply in certain contexts without
restricting the overall applicability of the term to those contexts:


Imagine that a national organization for some reason obtains an insurance policy
to protect it against misdeeds by any "mayor." The policy goes on to say that,
"with respect to" New York City, the word "mayor" means Rudy Giuliani and,
"with respect to" Austin, Texas, the word "mayor" means Kirk Watson. This
would scarcely compel the conclusion that no other city or town has a "mayor,"
or that coverage applied only to claims concerning New York City or Austin.



 We believe, however, that subsection (c) of the "Wrongful Act" definition
undermines this argument because it does not contain the phrase "with respect to." This section
partially defines "Wrongful Act" as "any negligent act, error or omission in the Administration
of any Benefit Program." "Benefit Program" is defined in the policy as "(a) any Sponsored Plan,
or (b) any Insured Plan." Thus, subsection (c), taken in conjunction with the definition of
"Benefit Program," effectively says: "Wrongful Act means . . . any negligent act, error or
omission in the Administration of any Sponsored Plan or any Insured Plan." (Emphasis added.) 
Subsection (c) parrots the identical language used in subsections (a)(iii) and (b)(i), except that it
does not use the "with respect to" language and thus negates the possibility asserted by Lutherans
that "Wrongful Act" could have other definitions. (4)

 Rules of construction require us to examine all parts of the contract and the
circumstances surrounding the formulation of the policy. See Columbia Gas Transmission Corp.,
940 S.W.2d at 591; Forbau, 876 S.W.2d at 133. Comparing the application for and terms used
in the Fiduciary Liability section with those in the Executive Liability section, it is clear that the
Fiduciary Liability section was intended to cover a much narrower range of potential losses. The
application for the Fiduciary Liability section asks almost exclusively about the employee benefit
plans administered by Lutherans, and Federal assessed the risks and set its premiums based on the
answers given. In contrast to the narrow focus of the application for the Fiduciary Liability
section, the application for the Executive Liability section asks broad questions about recent
changes, property holdings, and legal history of the parent organization, indicating that a much
broader range of risks was anticipated when the parties were negotiating the terms of this section
of the policy.

 Further, the rest of the Fiduciary Liability section is devoid of reference to any
breach of fiduciary duty other than with respect to employee benefit plans, and most of the defined
terms relate to employee benefit plans. The terms and definitions in the Executive Liability section
are much broader. Like the Fiduciary Liability section, the Executive Liability section of the
policy contains a broad insuring clause. (5) The Executive Liability section, however, contains a
definition of Wrongful Act that is much broader than that used in the Fiduciary Liability Section. 
The Executive Liability definition reads:


Wrongful Act means any error, misstatement, misleading statement, act, omission,
neglect, or breach of duty committed, attempted, or allegedly committed or
attempted, by an Insured Person, individually or otherwise, in his Insured
Capacity, or any matter claimed against him solely by reason of his serving in such
Insured Capacity.



Lutherans essentially ask us to accept as reasonable an interpretation of the definition in the
Fiduciary Liability section (which refers only to sponsored plans, insured plans, and benefit
programs) that makes that definition just as broad as that found in the Executive Liability section. 
We find this stretches the language too far. We believe the plain language of the two sections,
especially when compared side-by-side, shows that the Fiduciary Liability section covers a much
narrower range of potential wrongful acts. Because the actions that caused Lutherans' losses in
the underlying lawsuit did not involve the administration of any benefit program, any coverage
to which Lutherans are entitled must come from another section of the policy.


Executive Liability Coverage Section

 Federal also denied coverage under the Executive Liability section, asserting that
an exclusion precluded coverage. Lutherans initially argue that Federal is not entitled to summary
judgment based on the exclusion because it failed to plead this exclusion before the trial court. 
An insurer is not allowed to allege that a loss comes within a particular exception to general
liability unless that affirmative defense is contained in its pleadings. See Tex. R. Civ. P. 94. 
However, if the movant's pleadings do not support its motion for summary judgment, the non-movant must object or waive the error. See Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d
492, 495 (Tex. 1991). An unpleaded defense that is expressly included in a motion for summary
judgment is tried by consent if the non-movant does not object in its response to the motion. See
id. Here, Federal's motion for partial summary judgment on the Executive Liability section was
based entirely upon the applicability of the exclusion. Lutherans failed to object in the trial court,
and in fact argued the inapplicability of the same exclusion in their own motion for summary
judgment. Accordingly, they have waived any right to complain on appeal of Federal's failure
to plead the exclusion.

 Finding no procedural bar to Federal's summary judgment under the Executive
Liability section, we next turn to the interpretation of the exclusion at issue. The policy of
construing language in an insurance policy strictly against the insurer and in favor of the insured
is "especially strong when the court is dealing with exceptions and words of limitation." Blaylock
v. American Guarantee Bank, 632 S.W.2d 719, 721 (Tex. 1982); see also National Union Fire
Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991). "The court must adopt the
construction of an exclusionary clause urged by the insured as long as that construction is not
unreasonable, even if the construction urged by the insurer appears to be more reasonable or a
more accurate reflection of the parties' intent." National Union Fire, 811 S.W.2d at 555 (citing
Glover v. National Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977); Continental Cas. Co.
v. Warren, 254 S.W.2d 762, 763 (Tex. 1953)).

 The exclusion cited by Federal states that Federal is not liable under the insuring
clause on account of any claim made against Lutherans


based upon, arising from or in consequence of any actual or alleged Wrongful Act
arising from the Insured's conduct of business as an investment company,
investment advisor, trust company, commercial bank, insurance company,
insurance agent, securities broker, securities dealer, mutual fund manager,
financial planner or estate planner.


Federal essentially concedes that the claims brought against Lutherans in the underlying lawsuits
are covered by the insuring clause in the Executive Liability policy unless this exclusion applies. (6) 
Thus, coverage turns on whether the loss sustained by Lutherans in settling the Peter lawsuits
arose from wrongful acts committed in the "conduct of business as" one of the enumerated
entities.

 Federal urges that the only reasonable interpretation of this exclusion defines the
term "as" to mean "like," so that coverage is not available if Lutherans conducted business like
an investment company, trust company, financial planner, etc. See Webster's Third New
International Dictionary 125 (Philip B. Gove ed., 1986). In the underlying lawsuits, Peter
complained that Lutherans wrongfully pressured her into establishing trusts and annuities for the
benefit of the church, offered financial and estate-planning advice that Lutherans were not
qualified to give, and then mismanaged the assets she transferred to Lutherans' control. Federal
argues that all of these allegations easily fit within the ambit of the exclusion.

 Federal's interpretation of the exclusionary language may be reasonable, but that
is not enough to defeat Lutherans' claim for coverage, for Lutherans have offered a reasonable
interpretation as well. Lutherans ask us to define "as" to mean "in the capacity" of, pointing out
that at no time relevant to any of the underlying claims did they conduct business "in the capacity
of" an investment company, trust company, insurance company, or similar enterprise. In fact,
the gravamen of Peter's allegations in her lawsuits is that Lutherans should have been licensed to
conduct business in those capacities when the church offered its advice and services in managing
her assets.

 We find Lutherans' interpretation of this exclusion reasonable, especially
considering the language that Federal used in drafting the exclusion. Federal asks us to interpret
the exclusion to preclude coverage for any wrongful acts arising while Lutherans were engaging
in activities similar to banking, investment advising, estate planning, etc. Yet in drafting the
exclusion, Federal did not use the verb forms of these words, which might have indicated an
emphasis on the type of activity. Instead, Federal specifically referred to particular kinds of
entities--investment company, investment advisor, trust company, commercial bank, insurance
company, etc.--which indicates an emphasis on the form of organization used by Lutherans in
conducting the activities. It is undisputed that Lutherans never operated as any of the enumerated
business forms in the exclusion, nor did they purport to be licensed to do so. Construing the
exclusionary language narrowly, as we are required to do, we find reasonable Lutherans'
interpretation that, whatever activities they are accused of engaging in, they never conducted
business as any of the kinds of businesses listed in the exclusion. See Blaylock, 632 S.W.2d at
721; National Union Fire Ins. Co., 811 S.W.2d at 555. Because they have offered a reasonable
interpretation of the exclusionary language, the presumption in favor of coverage applies and
Lutherans are entitled to coverage under the Executive Liability section of the policy. See
Barnett, 723 S.W.2d at 666; American Nat'l Ins. Co., 927 S.W.2d at 243.







CONCLUSION


 We hold that the scope of coverage in the Fiduciary Liability section of the Federal
policy is not ambiguous and that Lutherans have not offered a reasonable interpretation of that
portion of the policy. We affirm that portion of the trial court's judgment. Regarding the
Executive Liability section of the policy, however, we hold that the exclusion Federal relies on
to deny coverage does not unambiguously apply to the misconduct alleged in the underlying
lawsuit; accordingly, we reverse the grant of summary judgment in favor of Federal as to the
Executive Liability section of the policy. That portion of the cause is remanded to the trial court
for such other proceedings as may be appropriate.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed: May 18, 2000

Do Not Publish
1. In addition to the Fiduciary Liability and Executive Liability sections at issue in this
case, the policy also contained a Crime Coverage section and a Kidnap/Ransom and Extortion
Coverage section.
2. The suit was brought by Boyd L. Richie in his capacity as Louise Peter's guardian.
3. Subsection (c) of the definition of "Wrongful Act" was added in an endorsement to the
policy, effective April 1, 1994. The endorsement purported to delete a non-existent paragraph
(c) and replace it with the above-quoted paragraph (c). Because the claims at issue in this case
were first asserted the following summer, the endorsement was in effect.
4. Using Lutherans' own example to demonstrate this point, imagine that an insurance
policy is obtained to protect against misdeeds by any "mayor." The term is then defined for
reference in the policy as follows: "Mayor means (a) with respect to New York City, Rudy
Giuliani, (b) with respect to Austin, Texas, Kirk Watson, (c) Rudy Giuliani or Kirk Watson." 
To the extent that subsections (a) and (b) might be read to indicate that mayors of other cities
could fall within the definition of "mayor," subsection (c) precludes that interpretation.
5. By contrast, the insuring clauses contained in the other two sections of the policy are
much narrower. The Crime Coverage section provides that Federal is liable only for losses
caused by theft or forgery by any employee of the insured. The Kidnap/Ransom and Extortion
Coverage section provides coverage only for payments made on behalf of the insured as a result
of kidnapping or extortion threats.
6. In its brief, Federal states that indemnification coverage is "potentially available" under
this section, but it then argues exclusively that the underlying claims come within the exclusion,
never arguing that the underlying claims are not acts covered under the insuring clause. 



dicated an
emphasis on the type of activity. Instead, Federal specifically referred to particular kinds of
entities--investment company, investment advisor, trust company, commercial bank, insurance
company, etc.--which indicates an emphasis on the form of organization used by Lutherans in
conducting the activities. It is undisputed that Lutherans never operated as any of the enumerated
business forms in the exclusion, nor did they purport to be licensed to do so. Construing the
exclusionary language narrowly, as we are required to do, we find reasonable Lutherans'
interpretation that, whatever activities they are accused of engaging in, they never conducted
business as any of the kinds of businesses listed in the exclusion. See Blaylock, 632 S.W.2d at
721; National Union Fire Ins. Co., 811 S.W.2d at 555. Because they have offered a reasonable
interpretation of the exclusionary language, the presumption in favor of coverage applies and
Lutherans are entitled to coverage under the Executive Liability section of the policy. See
Barnett, 723 S.W.2d at 666; American Nat'l Ins. Co., 927 S.W.2d at 243.







CONCLUSION


 We hold that the scope of coverage in the Fiduciary Liability section of the Federal
policy is not ambiguous and that Lutherans have not offered a reasonable interpretation of that
portion of the policy. We affirm that portion of the trial court's judgment. Regarding the
Executive Liability section of the policy, however, we hold that the exclusion Federal relies on
to deny coverage does not unambiguously apply to the misconduct alleged in the underlying
lawsuit; accordingly, we reverse the grant of summary judgment in favor of Federal as to the
Executive Liability section of the policy. That portion of the cause is remanded to the trial court
for such other proceedings as may be appropriate.