**Lacy D. BARNETT, Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, Appellee.**

No. 01–85–0526–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 3, 1986.

Rehearing Denied May 6, 1986.

Maurice Amidei, Law Offices of Maurice Amidei, P.C., Houston, for appellant.

Larry D. Carlson, Baker & Botts, Dallas, for appellee.

Before SAM BASS, COHEN and HOYT, JJ.

OPINION

COHEN, Justice.

Barnett sued to challenge Aetna's right to offset the amount of his Veterans Administration benefits from long-term disability payments. The trial court rendered a take-nothing judgment for Aetna. We affirm.

Barnett contends that the trial court erred in overruling his motion for judgment n.o.v. and in overruling his motion for new trial, because (a) the policy does not allow Aetna to deduct the amount of V.A. benefits from the long-term disability payments; (b) the deduction is prohibited by 38 U.S.C. § 3101(a) (1976); (c) there is no evidence to support the jury's finding or it was against the overwhelming weight of the evidence for the jury to find that appellant's disability commenced after April 1, 1967, the effective date of the policy.

Barnett began receiving long-term disability payments from Aetna in 1978 after suffering a job-related knee injury in 1977. Also in 1978, he began receiving V.A. benefits of $82 per month for a 20% disability due to a foot injury suffered in 1943, during World War II. Barnett was covered under the Aetna policy as an employee of Amoco Oil Company. During periods of total disability, the policy provided for monthly benefit payments equal to "60% of the employee's monthly rate of basic earnings if no other income benefits are payable for the given monthly period." The policy further provided:

> If other income benefits are payable for a given monthly period, the amount of monthly benefit payable under this policy for the given monthly period shall be an amount equal to the excess, if any, of 60% of the employee's monthly rate of basic earnings over the amount of other

income benefits payable for the given monthly period.

. . . . .

Other income benefits, referred to above, shall include only the following ...:

. . . . .

*Any payment for a disability* which commenced on or after the effective date of the employee's insurance under this policy, under the Federal Social Security Act or Railroad Retirement Act, or any similar act of any national government, or *by any federal*, state, provincial, municipal or other governmental *agency* or pursuant to any workmen's compensation law, compulsory benefit act or law, occupational disease law, or any other legislation of similar purpose, or the maritime doctrine of maintenance, wages, and cure. (Emphasis supplied.)

■ Barnett argues that the provision allows an offset only for benefits payable under a specifically named act. We disagree. The provision allows an offset for "any payment for a disability ... by any federal ... agency...." Further, the provision clearly states that "other income benefits" include payments for disability under "any similar act ... or any other legislation of similar purpose...." One purpose of the Social Security Act and the Railroad Retirement Act is to compensate persons suffering disabilities. This is also a purpose of Barnett's V.A. benefits. V.A. disability benefits are similar to disability benefits under the Railroad Retirement or Social Security Acts in that none of the three are contractual, none necessarily correlate with contributions made by or on behalf of the employee who receives the benefits, and Congress may withdraw all three at any time. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 574–75, 99 S.Ct. 802, 804–05, 59 L.Ed.2d 1 (1979); *Ex parte Johnson*, 591 S.W.2d 453, 454–56 (Tex. 1979).

Barnett relies on *Gibson v. Connecticut General Life Insurance Co.*, 145 Ga.App. 799, 245 S.E.2d 49 (1978), which is distinguishable. The Georgia Court of Appeals held that V.A. benefits were not "other income benefits" that could be offset

against disability benefits. The *Gibson* holding was based on policy language that defined "other income benefits" as benefits received "for loss of time from employment." Because V.A. benefits are not "for loss of time from employment," the court disallowed the offset. The policy in the present case has no such limiting language. Consequently, the reason for disallowing the offset in *Gibson* does not exist in this case.

Point of error number 1(a) is overruled.

■ Barnett next contends that the deduction violates the anti-assignment provision of 38 U.S.C. § 3101(a) (1976), which states:

Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

We find that the offset here involved is not prohibited by § 3101. Barnett has at all times received and retained possession of his entire veteran's benefits. He has made no written or oral assignment of them to Aetna. Aetna is not Barnett's creditor, and the benefits have not been attached, levied upon, or seized under any legal or equitable process.

The cases relied upon by Barnett are distinguishable because each involved an act clearly prohibited by the terms of § 3101. Three of these were seizures of benefits under legal process rendered during divorce proceedings. *See Ex parte Burson*, 615 S.W.2d 192 (Tex.1981); *Ex parte Johnson*, 591 S.W.2d 453; and *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979). Another, *McJunkin v. Estate of McJunkin*, 493 S.W.2d 278 (Tex.Civ.App. —Dallas 1973, writ ref'd n.r.e.), was a written assignment of benefits under a serviceman's life insurance policy. We agree that the court-ordered seizures and written as-

signments in these cases violated the statute.

Courts in Texas and elsewhere have reached the opposite result, however, on facts similar to those here. In *Capps v. American Mutual Liability Insurance Co.*, 601 S.W.2d 816 (Tex.Civ.App.—Dallas 1980, no writ), and *Voss v. Mutual of Omaha Insurance Co.*, 469 S.W.2d 602 (Tex. Civ.App.—San Antonio 1971, writ ref'd), insurance companies were allowed to set off both worker's compensation and social security benefits from the amounts they owed under group disability policies. While this case deals with an offset for veteran's benefits, we view *Capps* and *Voss* as persuasive authority because both the Federal Social Security Act and the Texas Worker's Compensation Act contain strong anti-assignment provisions very similar to that in § 3101 concerning veteran's benefits. 42 U.S.C. § 407(a) (Supp. I 1983) ("The right of any person to any future payment ... shall not be transferable or assignable, at law or in equity....");  Tex. Rev.Civ.Stat.Ann. art. 8306, § 3(b) (Vernon Supp.1986) ("All compensation ... shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, ... and any attempt to assign the same shall be void.")

Federal courts applying Texas and federal law have rejected the argument that an offset of worker's compensation and social security benefits violates the anti-assignment provisions within those acts. *See Lamb v. Connecticut General Life Insurance Co.*, 643 F.2d 108, 110–112 (3rd Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981); *Smith v. Ethyl Corp.*, 417 F.Supp. 669 (S.D.Tex.1976). We find the *Lamb* case especially persuasive. In *Lamb*, the court stated that 42 U.S.C. § 407, the anti-assignment provision under the federal Social Security Act, "was never intended to freeze a worker's private pension at a particular level. It was concerned

only with guaranteeing that the worker would actually receive for his own use the amount due him under the Social Security Act." 643 F.2d at 111 (quoting *Hurd v. Illinois Bell Telephone Co.*, 136 F.Supp. 125, 142 (N.D.Ill.1955), *aff'd*, 234 F.2d 942 (7th Cir.1956)). The court continued:

> Although it may appear inequitable that [Connecticut General] is, in a theoretical sense, receiving the benefit of cost-of-living increases under the Social Security Act by diminishing the amounts it pays, Congress, rather than the courts, should attend to this problem.... Lamb's predicament evokes sympathy. But courts are constrained to apply the law as adopted by the legislature.... It is the province of Congress, rather than the courts, to change existing law when social or economic conditions demand adaptation.

643 F.2d at 111–12.

The court's holding allowed the insurance company to offset not only Lamb's own social security benefits, but also the social security benefits she received for the support of her dependents. Other courts have reached the same result. *See also Killebrew v. Abbott Laboratories*, 352 So.2d 332, 335–36 (La.Ct.App.1977), *aff'd*, 359 So.2d 1275, 1278 (La.1978).

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them.... They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law.

*Railroad Commission v. Miller*, 434 S.W.2d 670, 672 (Tex.1968) (quoting *Texas Highway Commission v. El Paso Building & Construction Trades Council*, 149 Tex. 457, 234 S.W.2d 857 (1950)). Taking § 3101 as we find it, we find that it does not prohibit offsetting veterans administration benefits against the disability payments of Barnett's policy.

Point of error number 1(b) is overruled.[1]

1. Sub-section (b) of § 3101 expressly prohibits offsets against veteran's administration benefits of certain claims by the United States and its agencies. That the drafters of § 3101 found it necessary, despite the language in sub-section (a), to prohibit certain setoffs within sub-section

■ The policy allows Aetna to offset V.A. benefits only for disabilities that commenced on or after the date the employee became covered. Barnett contends that no evidence supports the jury's finding that his foot disability began after April 1, 1967, the date he was first covered. He also contends that there was overwhelming evidence to the contrary.

It is undisputed that the foot injury occurred in 1943, but the issue is when the disability, not the injury, occurred. Evidence that the foot injury did not result in disability before April 1, 1967, was: (a) the foot received no treatment other than bandaging at the time of the injury and never received any additional medical treatment while the appellant was in the service; (b) the foot injury did not interfere with the appellant's military job as a fire control man from 1943 until his discharge in 1946; (c) the foot injury did not interfere with his job performance after he was discharged from the service; (d) the appellant never missed any time from work; (e) the appellant did not mention his foot injury on his application for employment with Amoco in 1950 in response to questions asking what physical handicaps he had and whether he had ever been injured; (f) after the appellant's 1977 knee injury, he did not complain to the doctor of pain in his foot until after the surgery that realigned his knee; (g) realignment may cause old injuries to become symptomatic; (h) the appellant did not seriously pursue V.A. disability benefits until 1978; (i) the appellant did not know his heel had been broken until the x-rays in 1977 revealed it.

Evidence that the foot injury did result in disability before April 1, 1967, was the appellant's testimony that: (a) the foot had started giving him trouble, and he went to the doctor approximately five times in 1946; (b) he attempted to apply for V.A. benefits in Houston, but left because it took too much time; (c) he applied for V.A. benefits a second time in Texas City in 1954, but did not pursue the matter when

he was told that his records were lost; and (d) medical records with notations showing that the appellant complained of pain in his right foot once in 1963 and once in 1966. The medical records showed that the appellant had tenderness "confined to the forefoot" and "much pain over the dorsum [upper surface] of the foot." The 1943 injury was to his right heel.

There was evidence on both sides of the issue. The jury's answer was not against the great weight and preponderance of the evidence.

Points of error numbers 1(c) and 1(d) are overruled.

Point of error two requests attorney's fees if this Court renders judgment for appellant; consequently, it is overruled.

Points of error three through eight were waived at oral argument.

The judgment is affirmed.

(b) indicates that sub-section (a) does not prohibit the setoffs. Otherwise, subsection (b)

would be unnecessary.