Lacy D. BARNETT, Petitioner,

v.

**AETNA LIFE INSURANCE COMPANY, Respondent.**

No. C–5414.

Supreme Court of Texas.

Feb. 4, 1987.

Maurice Amidei, Houston, for petitioner.

Larry D. Carlson, Baker & Botts, Dallas, for respondent.

ROBERTSON, Justice.

This case involves whether an insurance company may offset benefits payable under the Veteran's Benefits Act from long term disability insurance payments. In response to issues submitted, the jury found that Barnett's date of disability under the VA did not begin until after the effective date of the Aetna policy, despite the fact that the actual injury occurred long before; that Aetna acted in good faith in taking the deductions; and, that Aetna's actions were not unconscionable. On the basis of these answers, the trial court entered judgment that Barnett take nothing. The court of appeals, 708 S.W.2d 911, affirmed, holding that the VA benefits were deductible under the policy.

In 1943, Lacy D. Barnett broke his right heel bone while serving aboard a U.S. naval vessel in the South Pacific. By virtue of the fact that his injury occurred during service, he became eligible for Veteran's Administration benefits. According to his testimony, he experienced pain and discomfort, and attempted on several occasions to apply for VA disability benefits. In 1946 his application was not processed because he did not have time to wait in line and could not afford to take time off for the mandatory hospital stay. On another occasion, he was told disability was unavailable because his files could not be located.

Through a succession of jobs, Barnett eventually ended up working for Amoco Oil Company. In 1967, Amoco began providing its employees with a noncontributory long-term disability insurance policy (i.e., employees were not required to contribute). In October 1977, Barnett suffered a permanently disabling injury to his right knee

while operating some heavy machinery. He underwent knee surgery in November of 1977 and began receiving long-term disability payments from Aetna each month. Due to the realignment of the leg, however, his prior heel injury became debilitating. Thereafter, he again applied for VA benefits and this time the agency approved him for a 10 percent disability, which was later raised to 20 percent. This entitled him to $82 per month in disability payments from the VA to go along with his Aetna payments of $835.93. When Aetna learned that Barnett was receiving VA benefits, it began to offset those payments. Barnett challenged Aetna's right to reduce the benefits in question and sued Aetna for breach of contract, alleging illegal and unconscionable conduct.

The insurance policy in question provides (in pertinent parts) that Aetna may deduct:

Any payment for a disability which commenced on or after the effective date of the employee's insurance under this policy, under the Federal Social Security Act or Railroad Retirement Act, or any similar act of any national government, or by any federal, state, provincial, municipal or other governmental agency or pursuant to any workmen's compensation law, compulsory benefit act or law, occupational disease law or any other legislation of similar purpose, or the maritime doctrine of maintenance, wages and cure.

To interpret the contract in question it is first necessary to determine exactly what is expressed in the provision. Here, the language provides that if disability occurs after the effective date of the policy, and such disability results in any payment of benefits, Aetna can make deductions from its monthly payment in the amount of those other benefits. Aetna can only deduct this "other income" if the benefits come from the following sources:

(1) Benefits under the Federal Social Security Act, Railroad Retirement Act, or any similar act of any national government or any federal, state, provincial, municipal or other governmental agency; or

(2) Benefits pursuant to any workmen's compensation law, compulsory benefit act or law, occupational disease law, or any other legislation of similar purpose; or

(3) Benefits under the Maritime Doctrine of Maintenance, Wages and Cure.

It is apparent that the policy does not specifically mention VA benefits, thus, if such deductions are to be allowed, it must be shown that VA benefits are included under the general language of the document. Barnett argues that the benefits are not included within the general language due to the contract construction rule of *ejusdem generis,* and the rule which requires insurance policies to be construed strictly against the drafter of the document. Aetna counters by asserting that rules of construction are not applicable when there is no ambiguity in the language used. While we agree with Aetna that *ejusdem generis* is not controlling, we hold that an ambiguity exists and that the clauses must therefore be construed against Aetna.

It is a fundamental rule of law that insurance policies are contracts and as such are controlled by rules of construction which are applicable to contracts generally. *See, e.g., General American Indem. Co. v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960); *Iowa Mut. Ins. Co. v. Faulkner,* 157 Tex. 183, 300 S.W.2d 639, 642 (1957); *Brown v. Palatine Ins. Co.,* 89 Tex. 590, 35 S.W. 1060, 1060 (1896). As pointed out by Aetna, however, if the insurance contract is expressed in plain and unambiguous language, a court cannot resort to the various rules of construction. *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984). Aetna argues that the general language clearly includes VA benefits, while Barnett argues that it manifestly does not. Although we agree that the language used is definite, the meaning and scope of the language is ambiguous. It has long been the law in this State that when language in a policy is susceptible to more than one reasonable construction, it is patently ambiguous. *Glover v. National Ins. Underwrit-*

*ers,* 545 S.W.2d 755, 761 (Tex.1977). Both parties' interpretations are reasonable; therefore, we must resort to rules of construction to decide whether VA benefits are properly included under the general language in the policy.

The first rule of construction raised by Barnett is *ejusdem generis.* As said by this court:

> Where specific and particular enumerations of persons or things … are followed by general words, the general words are not to be construed in their widest meaning or extent but are to be treated as limited and applying only to persons or things of the same kind or class as those expressly mentioned.

*Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 272 (1944);

■ Barnett contends that since Aetna explicitly mentioned the Social Security Act and the Railroad Retirement Act, those specific acts will provide the only possible offsets under the above theory. This argument, however, is without merit for several reasons. First, the provision in question does not seem to offend the general rule. Aetna did make specific examples of the Social Security Act and the Railroad Retirement Act in (1), but the general language in the provision reveals that *such* language applies only to that class of statutes which is similar to the specified examples. This is all that is required under *ejusdem generis.* The same reasoning applies to the general language contained in (2) of the provision as well. Furthermore, to adopt Barnett's reasoning on this issue would basically require us to ignore the general language clause completely. This is against the fundamental rule that each part of the contract should be given effect when it will not do violence to rules of law or construction. *General American Indem. Co. v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960); *National Security Life and Cas. Co. v. Davis,* 152 Tex. 316, 257 S.W.2d 943, 944 (1953); *see also First Nat. Bank v. Protective Life Ins. Co.,* 511 F.2d 731, 734 (5th Cir.1975) (Court must avoid construc-

tion of policy which does not give all portions of policy meaning and effect).

■ The second rule of construction urged by Barnett is the necessity of strictly interpreting the provision in his favor. Under normal circumstances, language and terms of an insurance policy are chosen by the insurance company. This being so, when the language chosen is susceptible of more than one construction, such policies should be construed strictly against the insurer and liberally in favor of the insured. *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977); *Ramsay v. Maryland American General Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976); *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 180 (Tex.1965). Furthermore, because this case involves an exception or limitation on Aetna's liability under the policy, an even more stringent construction is required. *Glover,* 545 S.W.2d at 761. Indeed, "we must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties intent." *Glover,* 545 S.W.2d at 761; *Continental Casualty Co. v. Warren,* 152 Tex. 164, 254 S.W.2d 762, 763 (1953). Keeping these rules of construction in mind, we turn to what must be considered the crucial question in this case: Is the VA Act sufficiently similar to any of the enumerated acts to be included within the general language of the offset provisions?

There is no doubt that similar *features* exist between the Social Security Act, the Workers' Compensation Act and the Veterans Benefits Act. For example, all are (1) governmental or legislative plans providing for (2) periodic payment (3) to qualified individuals (4) who have suffered a physical disability (5) without regard to fault. In addition, all provide death benefits, have anti-assignment clauses, and are administered by independent agencies. But the similarity of features of the acts are not the key ingredient, rather it is the objec-

tives for which they were created and the manner in which the acts are implemented.

The Social Security Act and Railroad Retirement Act are both based on *employment,* and were formed to deal with problems inherent to that area. The Veterans Benefits Act was created to help veterans who were disabled during active military service, and in no way relates to the employment of the claimant. The Social Security Act and Railroad Retirement Act benefits are an earned property right necessarily based on many factors including the amount of time one has worked, the amount of pay received and the amount contributed to the system. The VA benefits, on the other hand, are not an earned property right, require only that the claimant has been disabled while serving, and are completely unrelated to length of service, rank, or amount of pay. *See Ex parte Johnson,* 591 S.W.2d 453, 455 (Tex.1979). Under certain circumstances, both the Social Security Act and the Railroad Retirement Act systems do pay disability benefits to individuals, but that does not make them inherently similar to the VA Act, for the dissimilarities greatly outweigh the resemblances. This is particularly true when we must construe the provisions strictly against Aetna.

A much more difficult determination is whether the VA benefits are sufficiently similar to workers' compensation benefits. The avowed purpose of workers' compensation is to compensate injured individuals for their loss of earning capacity. *Bennight v. Western Auto Supply,* 670 S.W.2d 373, 379 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *St. Paul Ins. Co. v. McPeak,* 641 S.W.2d 284, 286 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). It was not designed to compensate an employee for his lost earnings or for the injury itself. *See McPeak* at 286. Thus, it follows that in order to be eligible for workers' compensation benefits, the claimant must be able to show not only a disability, but also employment when injured and a corresponding loss of earning capacity. This is dissimilar to the situation in VA

cases because the VA applicant need only show the disability, not that it is affecting his earning capacity, nor that he was employed on the day of the injury. These differences, when added to the rules which require strict construction against Aetna, mandate the holding that the VA Act is not sufficiently similar to Workers' Compensation Acts either.

We also point out that common sense supports such a holding. Millions of American citizens have served in the armed forces, and VA benefits are a vital and necessary service to thousands upon thousands of disabled veterans. We are not dealing with some obscure act against which no insurance company could reasonably provide. Benefits under the VA appear to be unique in character and scope, certainly important enough to warrant specific mention in an insurance policy if they are sought to be offset. This is especially true when the insurance company saw fit to explicitly mention the Railroad Retirement Act, which affects far fewer people on a day-to-day basis.

This decision is not to be construed to stand for the principle that VA benefits may never be offset under a long-term disability policy. For an insurance company to be authorized to deduct such benefits, it must plainly and unambiguously provide for such in the insurance contract.

With this decision made, we need only turn to Barnett's request for attorney's fees. The TEXAS CIVIL PRACTICE & REMEDIES CODE § 38.001 (Vernon 1986) (formerly art. 2226) provides that a person may recover reasonable attorney's fees if the claim is for an oral or written contract. Suits on insurance policies have been held to support the recovery of attorney's fees under this provision. *Texas Farmers Ins. Co. v. Hernandez,* 649 S.W.2d 121, 124 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). Thus, the only question is to determine a reasonable fee for Barnett's attorney. This is easily done, as both parties entered into a stipulation which agreed that $14,500 would be a reasonable fee for taking this case through the entire judicial process.

Therefore, we reverse the judgment of the court of appeals and remand to the trial court for a determination of the amount due Barnett consistent with this opinion.