IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-51002
_____


B. J. HALL,

Plaintiff-Appellant,

versus

WHITE, GETGEY, MEYER & CO., LPA,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Western District of Texas, San Antonio
USDC No. SA-97-CV-320
_____

February 20, 2001

Before JOLLY, JONES, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

In this legal malpractice case, B. J. Hall contends that the
law firm of White, Getgey, Meyer & Co., LPA ("White/Getgey")
negligently represented him in a suit in which Hall sought
disability benefits from an insurance company. Hall alleges that
the firm's failure to supplement interrogatory answers led to the
exclusion of Hall's medical expert witnesses at trial. In this
ensuing legal malpractice suit, the magistrate judge granted

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

White/Getgey's motion for summary judgment and dismissed Hall's complaint because she concluded that the underlying lawsuit was without merit and, consequently, that White/Getgey's negligence could not have been the proximate cause of Hall's failure to collect under the insurance policy. Specifically, the magistrate judge found that Hall could not have recovered on the disability insurance policy because he had presented no evidence that he was "totally disabled" during the time that he was covered by the policy. Hall argues that he had presented sufficient evidence of his disability to withstand summary judgment. We agree. We therefore reverse the magistrate judge's order and remand the case for further proceedings.

I

B. J. Hall was the executive vice president and chief operating officer of Incarnate Word Health Services from July 5, 1989 to May 18, 1990. The magistrate judge found that Hall's duties as Incarnate Word's vice-president included developing long-term plans and preparing reports, coordinating programs and services within Incarnate Word's multi-hospital system, attending all corporate board meetings, and attending "key meetings, institutes, etc., on local, state, and national levels to keep abreast of various trends" in the health care industry. The record indicates that Hall's position required him to travel often and to work up to ten to twelve hours a day.

As an employee of Incarnate Word, Hall was covered by a group disability policy issued by Hartford Life & Accident Insurance Company. Under this policy, Hall was eligible for benefits if he became "totally disabled" while employed at Incarnate Word. The policy defines "totally disabled" as being "prevented by disability from doing all the material and substantial duties of your own occupation." "Disability" includes accident, bodily injury, and sickness. The term "occupation" is not defined in the policy.

Hall suffered from a pre-existing condition: He had contracted polio as a child and suffered from "post-polio syndrome." There is undisputed medical testimony that Hall never fully recovered from his childhood bout with polio, that his level of physical performance ranged from 25% to 40%, and that his physical performance was gradually deteriorating as he aged.

On May 7, 1990, Hall was involved in an automobile accident. As a result, he suffered whiplash, numbness in his extremities, loss of balance, and fatigue. After the accident, Hall attended one staff meeting but did not otherwise return to work. On May 11, 1990, Incarnate Word notified Hall that his employment would be terminated effective May 18, 1990.

After losing his job at Incarnate Word, Hall searched unsuccessfully for hospital management positions that required less travel and physical exertion. He worked for one month for a job placement agency before resigning for health reasons.

3

During l990 and 1991, Hall consulted two physicians, Dr. Grimm and Dr. Vallbona, both of whom "suggested" (as the magistrate judge put it) that Hall had become totally disabled on May 7, 1990, as a result of the automobile accident. In April 1991, Hall submitted a claim for disability benefits under the Hartford policy.

The insurance company denied his claim. Hall then retained an attorney to represent him against Hartford. In early 1995, just a few months before the trial date, Hall changed attorneys and substituted the White/Getgey firm.[1] Unfortunately, White/Getgey failed to supplement their responses to interrogatories concerning the identity of medical expert witnesses who would testify at trial, and as a result, Hall's expert witnesses were excluded. Without medical experts, Hall had no possibility of winning his case and settled with Hartford for a nominal amount.

II

Thus, we come to this legal malpractice suit, which Hall has filed against White/Getgey, alleging the firm's failure to supplement its responses to interrogatories. To prevail, Hall must prove by a preponderance of the evidence that, but for the negligence of his attorneys, he would have recovered damages from Hartford on the disability insurance claim. See, e.g., Mackie v. McKenzie, 900 S.W.2d 445, 448-49 (Tex.App.–Texarkana 1995).

---

[1]At the time, an attorney from the White/Getgey firm estimated that Hall's suit had a settlement value of $300,000 to $500,000.

4

The case involves a procedural snag or two. The defendant, White/Getgey, an Ohio-based law firm, removed the case to federal court based on diversity jurisdiction. The case was assigned to the United States District Court for the Western District of Texas, which denied the firm's first motion for summary judgment. The parties then consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c): "Upon the consent of the parties, . . . [a magistrate] may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." The district judge randomly assigned the case to a magistrate judge. White/Getgey then filed a second motion for summary judgment. Although the second motion was substantially the same motion that the district judge had denied, the magistrate judge concluded that she was not bound by the district judge's denial of the first motion. On September 13, 1999, the magistrate judge issued an order granting White/Getgey's motion for summary judgment and dismissing Hall's claims. The magistrate judge concluded that Hall had "failed to submit evidence creating a fact issue" that he was "totally disabled," as defined by the policy, prior to May 18, 1990. Because Hall had failed to create a fact issue regarding the merit of his underlying lawsuit, he thus could not show that White/Getgey's negligence was the proximate cause of his failure to collect under the Hartford disability policy.

5

III

Hall raises two issues on appeal. The first issue concerns the scope of a magistrate judge's authority under 28 U.S.C. § 636(c). The second issue concerns the sufficiency of Hall's summary judgment evidence on the question whether, prior to the termination of his employment with Incarnate Word, he was "totally disabled" within the meaning of his insurance policy. Both questions are reviewed de novo. See generally CHILDRESS & DAVIS, FEDERAL STANDARDS OF REVIEW § 2.13 (3d ed. 1999) ("purely legal" conclusions, such as the meaning of a statute conferring jurisdiction, are reviewed de novo); Horton v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999) (explaining that this court reviews a district court's grant of summary judgment de novo, applying the same substantive test set forth in Federal Rule of Civil Procedure 56).

A

Hall contends that under 28 U.S.C. § 636(c), a magistrate judge does not have the authority to grant a motion for summary judgment if a district judge has already denied a substantially equivalent motion. We conclude that this argument, that the magistrate judge improperly "overruled" the district judge's prior order, is without merit. As we have stated before,

> when (1) both parties consent to the jurisdiction of the magistrate judge and (2) the district judge specifically designates the magistrate judge to conduct civil proceedings, the magistrate judge "may act in the

6

capacity of a district court judge" and is not bound by prior opinions expressed by the district judge.

Cooper v. Brookshire, 70 F.3d 377, 378 n.6 (5th Cir. 1995); see also WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 3072.

B

We now turn to the second issue: whether the magistrate judge erred in granting White/Getgey's motion for summary judgment.

(1)

In its second motion for summary judgment, White/Getgey argued that Hall had not presented evidence that, on or before May 18, 1990, he had been prevented by injury and sickness from performing all the material duties of his occupation. The firm focused on Hall's behavior following his automobile accident. The firm noted that Hall could have performed at least some of his duties, that he continued to seek employment after May 1990, and that he did not file for disability benefits until April 1991. Hall could not have been totally disabled, the firm seems to argue, because Hall did not consider himself totally disabled in May 1990, the point at which his relationship to Incarnate Word was severed.

In the magistrate judge's opinion and order granting the motion for summary judgment, the magistrate judge relied on two arguments that had not been advanced before. First, she stated that Hall had not produced necessary evidence of his occupational duties. Her explanation is as follows:

7

To establish a fact issue that he should have prevailed in the underlying lawsuit and was totally disabled under the terms of the policy, plaintiff must produce evidence that he was "prevented by disability from doing all the material and substantial duties of [his] occupation." Plaintiff has failed to introduce any evidence relating to his occupation and what the material and substantial duties actually were. Instead, he produced the job requirements for his specific position as the Executive Vice President and Chief Operating Officer of Incarnate Word Health Services. However, nowhere in the record does plaintiff discuss his occupation generally.

Second, the magistrate judge concluded that Hall's medical expert testimony was "not sufficient to even establish that [he] was disabled for his position at Incarnate Word, much less his occupation, because there is no evidence that Dr. Grimm was aware of plaintiff's job responsibilities."

In sum, these are the three principal arguments supporting summary judgment for White/Getgey: Hall's behavior after the accident, the lack of evidence regarding his general occupation, and the insufficiency of the medical testimony. For the reasons set forth below, we do not find any of these arguments persuasive.

(2)

As the magistrate judge recognized, however, before we may address any of these arguments, we must ascertain the meaning of several terms in the insurance policy. We begin with the meaning of "occupation," a term not defined in the Hartford policy.

The magistrate judge's order granting summary judgment for White/Getgey is predicated on a sharp distinction between Hall's general "occupation" and his "specific position" at Incarnate Word.

8

We find this distinction problematic here because the court's order cites no language from the Hartford policy and no relevant legal authority that would support the distinction between Hall's occupation and the particular position that he occupied when the policy was in force.[2]  And in the course of this appeal, neither White/Getgey nor this court has uncovered any precedent supporting the distinction.  We can only assume, then, that the district court applied the accepted rules of contract interpretation and construction and found the meaning of the term "occupation" to be unambiguous.

Whether a contract term is ambiguous is a question of law that appellate courts review de novo.  See National Union Fire Ins. Co. v. CBI Industries, Inc., 907 S.W.2d 517, 520 (Tex. 1995).  When deciding whether a contract term is ambiguous, a court is not confined to the four corners of the instrument: "Evidence of surrounding circumstances may be consulted . . . . to determine whether or not the contract is ambiguous." Sun Oil v. Madeley, 626 S.W.2d 726, 731 (Tex. 1981).[3]  These "surrounding circumstances"

---

[2]Because White/Getgey had not raised this argument in its motion for summary judgment, the precise meaning of "occupation" had not been argued by the parties in the district court.

[3]See also Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 591 (Tex. 1996); City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968)("Where a question relating to the construction of a contract is presented, . . . we are to take the wording of the instrument, considering the same *in the light of the surrounding circumstances*, and apply the pertinent rules of construction thereto and thus settle the meaning of the contract.")(emphasis added).  Thus, the general rule is that

include trade usage and the course of the parties' performance of the contract.[4]

In this case, the most compelling evidence of "surrounding circumstances" is the Hartford insurance company's claim form, which both parties submitted as an exhibit. The claim form includes sections to be filled out by the employer, the employee, and the employee's physician. Both Incarnate Word and Hall listed his "occupation" as "Executive Vice-President." More importantly, one part of the claim form instructs the employer to "Describe exact duties of Employee's Occupation *or* attach copy of job description." Incarnate Word complied by attaching a document entitled "position analysis" that listed Hall's duties as the company's executive vice-president.[5] From a review of the claim form, we believe it is clear that Hall, Incarnate Word, and Hartford all treated Hall's "occupation" and his "specific position" at Incarnate Word as interchangeable or synonymous terms. This is the meaning that we must assign to "occupation," inasmuch

---

a court "may (1) hear and consider evidence of the circumstances surrounding the formation and execution of the contract and (2) apply the rules of construction whenever the parties disagree as to the proper construction of a writing. Neither a pleading nor a finding of ambiguity is required." Mark K. Glasser & Keith A. Rowley, <u>On Parol: The Construction and Interpretation of Written Agreements and the Role of Extrinsic Evidence in Contract Litigation</u>, 49 BAYLOR L. REV. 657, 701 (1997).

[4]<u>See</u> Glasser & Rowley, 49 BAYLOR L. REV. at 667.

[5]Incidentally, the magistrate judge relied on this "position analysis" in her description of Hall's job duties.

as the court's duty is to give effect to the intent of the contracting parties. See Lenape Resources Corp. v. Tennessee Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996).

Considering the circumstances surrounding the formation and execution of this insurance contract, we conclude that there is only one reasonable interpretation of the term "occupation." Thus, Hall's evidence of his duties as executive vice-president of Incarnate Word is sufficient evidence of his occupation, as that term is used in the insurance policy.

(3)

We now turn to the meaning of "totally disabled," another disputed contract term. As noted above, Hall could recover on the Hartford policy only if he had suffered a "total disability," that is, if he had been "prevented by disability from doing all the material and substantial duties of [his] own occupation."

The magistrate judge found that Hall's duties at Incarnate Word required him to develop plans, prepare reports, and coordinate programs and services within the company's multi-hospital system, and to attend corporate board meetings and conferences in order to "keep abreast of various trends" in the health care industry. At least some of these duties required Hall to travel extensively and work long hours. The scope and nature of Hall's duties at Incarnate Word are not in dispute.

The parties do disagree, however, on the meaning of the phrase "all the material and substantial duties." Hall argues that he is

11

totally disabled because he was unable to perform "every aspect of [his] principal work" as Incarnate Word's vice-president. White/Getgey argues that Hall was not "totally disabled" because he could still "perform some of his duties as an executive vice-president."

We have considered the arguments of both parties and have reviewed all the disability clauses in the insurance policy. However, we have been unable to determine the precise meaning of the disputed phrase. We therefore conclude that the phrase "all the material and substantial duties" is ambiguous in the sense that it is "reasonably susceptible" to either of the proposed interpretations. Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1979).

In a typical contract case, ambiguity creates a fact question as to the parties' intent. See Lenape Resources, 925 S.W.2d at 574. Here, however, the parties have offered no evidence that creates a dispute of fact on this question. And, more importantly, in the specific context of insurance contract cases, Texas courts resolve ambiguities against the carrier and in favor of the insured.[6] See State Farm Fire & Cas. Co. v. Reed, 873 S.W.2d 698, 701 (Tex. 1993) ("Based upon an examination of the text . . . and considering other possible reasonable interpretations, we conclude

---

[6]This rule governing insurance contracts is a more specific application of the rule *contra proferentem*: Under Texas law, "a writing is generally construed most strictly against its author." Addison Bank v. Temple-Eastex, Inc., 672 S.W.2d 793, 798 (Tex. 1984).

12

that the provision is ambiguous.  Therefore, strictly construing the policy language against the insurer and adopting the interpretation most favorable to the insured, we hold that coverage exists under the policy. . . .").  Thus, if both the insurer and the insured offer reasonable interpretations of an ambiguous term in the policy, we resolve the ambiguity in favor of the insured.  See Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987).

In the light of this presumption in favor of coverage, Hall's interpretation of "all the material and substantial duties" must be favored.  Therefore, under this policy, an employee such as Hall is deemed "totally disabled" if he is unable to perform the entire set of his material duties.

(4)

The next step is to determine whether, in order to survive summary judgment, Hall presented sufficient medical testimony of total disability at the time he left Incarnate Word in May 1990.

In 1990 and 1991, Hall was examined by two physicians: Dr. Grimm, a neurologist; and Dr. Vallbona, a specialist in post-polio syndrome.  In their depositions, both doctors described Hall's physical condition and his deterioration after the May 1990 accident.  And, as the magistrate judge correctly observed, both doctors concluded that Hall probably became disabled on May 7, 1990, as a result of the automobile accident that aggravated the symptoms of his post-polio syndrome.  Dr. Grimm stated in his

13

deposition that Hall's "motor vehicle accident added enough to his difficulties that [it] really disabled him for the kind of work that he was doing."  Dr. Vallbona declined to set the date of disability with certainty, but he said that "May 1990 may have been the date when I would consider him likely to have become permanently disabled."

The magistrate judge found the expert medical testimony unsatisfactory for the sole reason that neither physician was fully aware of Hall's occupational duties.  Consequently, neither physician could definitively say that Hall was "totally disabled" within the meaning of the insurance policy.  However, we see no reason to disregard the medical testimony merely because the physicians had not been made fully aware of Hall's specific duties at Incarnate Word.  The ultimate issue, of course, is whether Hall's medical condition on May 18, 1990, prevented him from performing all the material duties of his occupation.  And while Federal Rule of Evidence 704 permits the medical expert to offer his opinion on the ultimate issue, Rule 704 does not require the expert to do so.  As long as (a) the physicians testify to Hall's medical condition in May 1990 (including their estimation of Hall's capacity to work long hours and to travel), and (b) Hall presents evidence of his occupational duties at Incarnate Word, the trier of fact may determine the ultimate issue.

(5)

14

Our final consideration is White/Getgey's principal argument that Hall's behavior after the May 1990 accident proves that he was not totally disabled during the relevant time period. White/Getgey points to the facts that Hall traveled during the summer of 1990 and even took a family vacation to Europe, that Hall continued to search for similar employment, and that Hall did not believe he was totally disabled until sometime in 1991. These facts are indeed relevant to the question of Hall's disability, and the trier of fact will need to weigh this evidence against the testimony of Hall and his medical expert witnesses. Even so, this evidence of Hall's subsequent behavior is clearly insufficient to warrant summary judgment for White/Getgey under Rule 56 of the Federal Rules of Civil Procedure.

IV

Considering all of the evidence in the record, a jury reasonably could conclude, first, that Hall's duties at Incarnate Word Health Services (such as attending national conferences and coordinating activities in a multi-hospital system) demanded a high tolerance for stress, long and uninterrupted working hours, and considerable travel; and, second, that after his May 1990 automobile accident that aggravated his post-polio syndrome, Hall was no longer capable of performing those occupational duties.

We conclude that the magistrate judge erred in concluding that the underlying lawsuit is without merit. The summary judgment for

15

White/Getgey is therefore REVERSED, and the case is REMANDED for proceedings not inconsistent with this opinion.

REVERSED and REMANDED.