IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 02-0730
════════════
 
Excess 
Underwriters at Lloyd’s, London and Certain Companies Subscribing 
Severally But Not Jointly to Policy No. 548/TA4011F01, 
Petitioners,
 
v.
 
Frank’s Casing Crew & 
Rental Tools, Inc., Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued February 
15, 2006
 
 
            
Justice 
Wainwright, dissenting.
            
In the heat of trial, an insured and its excess insurer reached an 
agreement to address a situation not covered by the insurance policy. The 
insured accepted a $7.5 million payment from the insurers (including $500,000 
from the primary insurance carrier) to settle the case against it, but later 
objected to enforcement of an express condition in the agreement to settle the 
case on its behalf. A deal is a deal, whether the insurer or the insured likes 
it after the fact. Because the Court’s holding contradicts this principle, I 
respectfully dissent.
            
At trial it quickly became clear that defendant Frank’s Casing was the 
focus of plaintiff ARCO’s attention. Frank’s Casing 
and its insurers feared a large verdict that might eclipse the limits of its 
excess coverage. On two prior occasions Frank’s Casing refused offers by the 
excess underwriters to fund a settlement of the claims brought against it by 
ARCO, subject to the condition that the excess underwriters could seek a 
reimbursement if the settled claims were not covered. The third offer to settle 
the dispute with ARCO for $7.5 million in insurance funds was also expressly 
conditioned on the right of the excess underwriters to seek reimbursement of the 
settlement payment if a later declaratory judgment action determined that ARCO’s claims were not covered by the excess policy. Frank’s 
Casing did not respond verbally or in writing to the third offer, but Frank’s 
Casing accepted the $7.5 million check and announced on the record in the trial 
court that it accepted the insurance payment to fund the settlement of the 
dispute and that the settlement with plaintiffs was consummated “by letter dated 
February 23, 1998.” The February 23rd letter contained the reimbursement term. 
The trial court rendered judgment on the settlement. In the subsequent 
declaratory action brought by the excess underwriters, Frank’s Casing lost its 
argument that ARCO’s claims were covered by the excess 
policy on summary judgment and did not appeal the final judgment. Having secured 
millions of dollars from the excess underwriters by virtue of their offer to 
settle the dispute, Frank’s Casing now claims that it is not bound by the 
express condition in the offer to reimburse the payment by the excess 
underwriters. By its actions and its statements in the trial court confirming 
the settlement, Frank’s Casing accepted the February 23rd offer. And Frank’s 
Casing lost on the issue the parties reserved to finally determine whether a 
right of reimbursement arose—the trial court determined there was no insurance 
coverage for ARCO’s claims.
            
Frank’s Casing admits that the excess underwriters paid $7 million to 
settle the claims on its behalf. Frank’s Casing does not dispute that the third 
settlement offer conditioned the right to reimbursement on whether coverage was 
found to exist and did not reject the offer or object to the reimbursement 
condition. Frank’s Casing lost on the coverage issue. Notwithstanding these 
facts, the Court surprisingly bifurcates the settlement 
offer to allow Frank’s Casing to accept the benefits of a contract and reject 
its obligations. The Court holds that Frank’s Casing consented to the settlement 
payment but not to the express condition. Frank’s Casing, the Court holds, can 
keep the $7.5 million benefit from the agreement but is not bound by the 
obligation to reimburse the excess underwriters when it lost its claim that 
there was coverage of the settled claims. The Court essentially decides that the 
insurer is bound by the deal but that the insured can rewrite the deal if 
it does not like the result. 
            
The Court relies on Texas Association of Counties County Government 
Risk Management Pool v. Matagorda County. 52 S.W.3d 128 
(Tex. 
2000). In Matagorda County, the Court restricted an insurer’s 
right to reimbursement of settlement payments later found not to be covered by 
an insurance policy to circumstances where the insurer “obtains the insured’s 
clear and unequivocal consent to the settlement and the insurer’s right to seek 
reimbursement.” Id. at 
135. Matagorda County erected this uncommon standard 
for contract formation even though the standard eschewed traditional common law 
contract principles on the tenets necessary to establish a right to recover. 

I.
            
Once upon a time, the relationship between insurer and insured was fully 
one of contract and was governed by the terms and conditions of the policy. 
See Progressive County Mut. Ins. Co. v. Sink, 107 
S.W.3d 547, 551 (Tex. 2003) (insurance policy is a contract to be interpreted 
according to contract principles); Barnett v. Aetna Life Ins. Co., 723 
S.W.2d 663, 665 (Tex. 1987) (“It is a fundamental rule of law that insurance 
policies are contracts and as such are controlled by rules of construction which 
are applicable to contracts generally.”). Even after common law modifications 
and legislative regulation of the parties’ consensual relationship, see, 
e.g., Tex. Bus. & Com. Code §§ 17.41–.63; 
Tex. Ins. Code §§ 541.001–.454; Arnold v. Nat’l County Mut. 
Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987) (holding that insurers owe a duty 
of good faith and fair dealing toward insureds); G. 
A. Stowers Furniture Co. v. Am. Indemn. Co., 15 S.W.2d 
544, 547 (Tex. Comm’n App. 1929, holding approved) 
(creating a duty to accept reasonable settlement demands within policy 
limits), the relationship between insurer and insured 
is still fundamentally based on the agreement of the parties. See Provident 
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003) (insurance 
policies are interpreted under rules of contract construction); Barnett, 
723 S.W.2d at 665. In an insurance arrangement like the one at issue, the 
insured and insurer enter an agreement for the insurer to cover prescribed 
risks. Generally, the insured pays premiums to protect it against certain 
unrealized fortuitous costs or damages, up to an agreed limit, that it may 
suffer or be obligated to pay. See Eric Mills Holmes, et al., Holmes’ Appleman on 
Insurance, § 1.4, at 22–23 (2d ed. 1996). A contract of insurance 
obligates the insurer to cover only the risks prescribed in the policy. 
Id. at 
29.
            
The standard of proof for an agreement is straightforward. A contract is 
established when proven by a preponderance of the evidence that an offer is 
accepted, accompanied by consideration. See Fed. Sign v. Tex. S. Univ., 
951 S.W.2d 401, 408 (Tex. 1997) (“A contract must be based upon a valid 
consideration, in other words, mutuality of obligation.”); Haws & Garrett 
Gen. Contractors, Inc. v. Gorbett Bros. Welding 
Co., 480 S.W.2d 607, 609 (Tex. 1972) (“[T]here must be shown the element of 
mutual agreement which, in the case of an implied contract, is inferred from the 
circumstances.”). Unusual to Texas’s common law 
of contracts, Matagorda County made the existence of a 
contractual agreement in this context subject to “clear and unequivocal” proof 
of acceptance.[1] Matagorda County, 52 S.W.3d at 
135. Matagorda 
County provides no reasoning to 
support its creation of that particular standard, but that remains the law in 
Texas. Because 
the parties reached an agreement on reimbursement, we should decide this case by 
simply enforcing their agreement. 
II.
            
Frank’s Casing agreed to pay premiums for the provision of excess 
insurance coverage by the excess underwriters in the amount of $10 million. ARCO 
sued Frank’s Casing and others after an offshore drilling platform partially 
fabricated by Frank’s Casing for ARCO collapsed in the Gulf 
of Mexico. The excess underwriters issued a reservation of rights 
letter contesting coverage under its excess insurance policy with Frank’s 
Casing. When settlement discussions were unfruitful, the case was tried to a 
jury. During the heat of trial, with a large verdict appearing increasingly 
likely, Frank’s Casing entered another round of settlement discussions directly 
with ARCO and procured a settlement demand of $7.5 million, which Frank’s Casing 
presented to the excess underwriters. The excess underwriters agreed to pay $7 
million (plus $500,000 from the primary insurer) to settle the case, conditioned 
on their right to seek reimbursement if they were ultimately not required to 
extend coverage for the claims at issue.
            
At the time the parties were considering the settlement, both believed 
they were in difficult positions. The record indicates that both parties 
believed a substantial verdict, possibly beyond the excess layer of insurance 
coverage, was likely. Both also knew that their original contract of insurance 
did not address the issue of the insurer’s ability to obtain reimbursement of a 
settlement payment for uninsured claims. Under these circumstances, the 
following decision trees grew.
            
During the trial, the excess underwriters had to decide whether to fund a 
settlement for an amount less than their policy limits, which included claims 
potentially not covered by their policy, to avoid the risk of a larger judgment. 
By agreeing to pay a settlement amount that was less than the excess 
underwriters’ policy limits, the excess underwriters would avoid a verdict that 
could exhaust their policy limits and potential extra-contractual claims. Thus, 
the excess underwriters would benefit from the proposed settlement.
            
Frank’s Casing likewise believed that it was faced with the specter of a 
large jury verdict against it. By settling within the excess underwriters’ 
policy limits, Frank’s Casing avoided a verdict beyond policy limits, a portion 
of which Frank’s Casing would be personally liable to pay. The settlement would 
end the trial and vanquish the risk of a large verdict and Frank’s Casing’s 
potential exposure for amounts above the excess limits or for the entire verdict 
if there were no coverage. In other words, the settlement would also benefit 
Frank’s Casing.
            
The excess underwriters decided to pay their portion of the settlement 
but conditioned their payment on their right to seek reimbursement if the claims 
were proven not to be a risk the parties had agreed to cover under the excess 
policy. The excess underwriters sent a letter on February 23, 1998, making this 
offer to Frank’s Casing. The letter further stated that the excess underwriters 
“w[ould] contact Arco/Vastar’s attorney th[at] morning” 
to settle the claims against Frank’s Casing. Frank’s Casing concurred that the 
settlement was reasonable and not only approved but demanded that the excess 
underwriters consummate the $7.5 million settlement. The excess underwriters 
sent a second letter on February 23rd to confirm the settlement with ARCO, 
copied Frank’s Casing on the letter, and then filed a declaratory judgment 
action contesting coverage that same day. The next day at the hearing before the 
trial court, which had recessed trial to give the parties the opportunity to 
resolve the dispute, the parties dictated their settlement into the record. At 
the hearing, Frank’s Casing did not object to any portion of the settlement, but 
asserted that by agreeing to the settlement the excess underwriters waived their 
right to contest “coverage,” making no mention of reimbursement.
            
Hence, we come to the dispute before this Court. Did Frank’s Casing 
obtain a windfall—i.e., payment by its insurer of millions of dollars to settle 
claims against it for which there was no coverage? Or did the excess 
underwriters voluntarily pay a settlement to obtain the benefits of saving 
potentially millions of dollars from the expected verdict? Two sophisticated 
entities carefully exercised their rights and obligations in light of their 
potential exposure. Both made reasoned decisions they believed to be in their 
best interests under the circumstances. But for the reimbursement condition 
included in the excess underwriters’ offer accepted by Frank’s Casing, I would 
conclude that there is no right to reimbursement. Absent the parties entering 
into a legally enforceable agreement, I do not believe that the equities of the 
parties’ respective circumstances alone support allowing a right to recoup the 
settlement payment.
            
If Frank’s Casing’s only conduct toward the excess underwriters upon 
obtaining the $7.5 million settlement offer from ARCO was to acquiesce to a 
settlement that did not include the reimbursement condition, the excess 
underwriters would have no right to reimbursement. However, I conclude that 
Frank’s Casing, by its acceptance of the $7.5 million payment and acquiescence 
in the settlement, bound itself under principles of contract law to the 
condition that the excess underwriters would be able to seek reimbursement. 
Frank’s Casing was not simply a beneficiary of its insurer’s settlement, but 
demanded in a prior letter dated February 19, 1998, that the excess underwriters 
act in a “reasonably prudent” manner, accept the settlement offer from ARCO, and 
do so “BEFORE a ruling by the court on the contract issues . . . [which] could 
occur at any time, but will occur, at the latest, by beginning of court Tuesday 
of next week.” Including the weekend, the following Tuesday, February 24, 1998, 
was five days away. The excess underwriters agreed to pay the settlement 
conditionally. The second February 23rd letter, which Frank’s Casing told the 
trial court was the basis of settlement, provided:
 
[The 
excess underwriters] continue to reserve all rights against Frank’s [Casing] as 
to coverage under the Umbrella Policy, and will hold Frank’s [Casing] 
responsible for and will seek reimbursement of all sums paid in settlement of 
claims for which no coverage exists under the Umbrella Policy.
 
 
(emphasis added). The excess underwriters then settled the 
case against Frank’s Casing the same day and faxed written confirmation to ARCO 
with a copy to Frank’s Casing. Frank’s Casing never asserts that it rejected the 
settlement offer or made a counteroffer. Instead, Frank’s Casing acknowledges 
that it accepted the settlement offer from the excess underwriters but argues 
that the excess underwriters did not obtain “Frank’s [Casing’s] agreement nor 
its clear and unequivocal consent to seek reimbursement.”[2] 
            
The second letter sent on February 23rd to the plaintiffs confirmed the 
verbal settlement but stated that the excess underwriters would continue to 
reserve all rights “against Frank’s [Casing] as to coverage” and, for a second 
time that day, affirmed that they would “hold Frank’s [Casing] responsible for 
and will seek reimbursement of all sums paid in settlement of claims for which 
no coverage exists under the Umbrella policy.” Frank’s Casing again did not 
reject but accepted the settlement. After entering the settlement, the excess 
underwriters filed a declaratory judgment action contesting coverage that 
afternoon.
            
The next morning the trial court recessed the trial to enable the parties 
to dictate their settlement into the record. Frank’s Casing stated that “by 
letter dated February 23, 1998” (which conditioned settlement on reimbursement) 
from the excess underwriters to the plaintiffs, it had agreed to pay $7.5 
million to settle the case with the plaintiffs. Frank’s Casing then asserted 
that the excess “underwriters have either waived their right to reserve cover 
[sic] issues or alternatively [are estopped] from 
asserting any coverage issues since underwriters have agreed to the settlement.” 
Counsel for the excess underwriters reconfirmed on the trial court record:
 
            
This settlement is being funded by Frank’s [Casing’s] umbrella 
underwriters subject to a full reservation of all rights against Frank’s 
[Casing] under the umbrella policy. . . . And these [excess] underwriters will 
hold Frank’s [Casing] responsible for and will seek reimbursements of all sums 
paid [for] the settlement of claims for which no coverage exists under the 
umbrella policy.
 
 
The trial 
court rendered judgment on the agreement dictated into the record. The 
Settlement Agreement and Release, signed later by Frank’s Casing and the excess 
underwriters, confirmed that the excess underwriters’ right to seek 
reimbursement was not released. The covenants not to sue and the releases 
between the parties did not apply “to any claims that exist presently . . . 
between Defendant Frank’s [Casing] and Frank’s [Casing’s] Insurers arising from 
the claims asserted by Plaintiffs.”
            
Frank’s Casing has never disputed that the excess underwriters’ 
settlement offer was conditioned on a right to seek reimbursement. Frank’s 
Casing argues that by its actions it accepted the part of the settlement offer 
providing for the excess underwriters to make a $7 million settlement payment 
but did not accept the condition on that promise. The facts do not support 
Frank’s Casing’s position.
III.
            
A contracting party cannot accept the benefits of a contract and disclaim 
its obligations. W. H. Putegnat Co. v. Fid. & 
Deposit Co. of Md., 29 S.W.2d 1004, 1006 (Tex. 1930) (“Where one accepts the 
benefits of a contract[,] he must assume its burdens.”); United Concrete Pipe 
Corp. v. Spin-Line Co., 430 S.W.2d 360, 364 (Tex. 1968) (noting that a party 
may have the right to withdraw his consent before a contract’s performance but 
not after the promise is accepted or performed); Robert H. Jerry, II, The Insurer’s Right to 
Reimbursement of Defense Costs, 42 Ariz. L. Rev. 13, 72 (2000) (“[A]cquiescence in and acceptance of the benefits of [the 
party’s] performance constitute a manifestation of acceptance of the terms on 
which [the party’s] performance was tendered.”). To 
effectively decline an offer, some terms of which an offeree disapproves, the offeree 
must reject the offer or make a counteroffer. See Ashford Dev., Inc. v. USLife Real Estate Servs. 
Corp., 661 S.W.2d 933, 934–35 (Tex. 1983) (determining that an additional 
term in a loan commitment was a counteroffer); Komet v. Graves, 40 S.W.3d 596, 601 (Tex. 
App.—San Antonio 2001, no pet.) (holding an attempt to 
change an offer before acceptance operates as a rejection and counteroffer). 
Neither occurred here before the settlement was 
consummated.
            
Frank’s Casing accepted the settlement proposed by the excess 
underwriters, thereby acquiescing in the terms of the offer, and bound itself to 
the settlement under the law of contracts. See Blue Ridge Ins. Co. v. 
Jacobsen, 22 P.3d 313, 317 (Cal. 2001) (holding an insurer may seek 
reimbursement for settlement of uncovered claims where the insured is aware of 
the reservation but acquiesces). In practice in an insurance context, insureds often communicate acceptance of an offer by 
conduct, as in the case of an insured accepting a defense from an insurer that 
reserves its right to deny coverage. In such cases, the insured’s acceptance of 
the defense is an implied consent to the insurer’s reservation of the coverage 
issues, “even in the absence of an express consent or acceptance of the offer.” 
W. Cas. & Sur. Co. v. 
Newell Mfg. Co., 566 S.W.2d 74, 76 (Tex. Civ. App.—San Antonio 1978, writ 
ref’d n.r.e.); see also 
In re Halliburton Co., 80 S.W.3d 566, 568 (Tex. 2002) (“[W]hen an employer 
notifies an employee of changes to the at-will employment contract and the 
employee ‘continues working with knowledge of the changes, he has accepted the 
changes as a matter of law.’”) (quoting Hathaway v. 
Gen. Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986)).
            
Although the excess policy does not address reimbursement, during the 
trial the parties extended their contractual arrangement to address the risk of 
a large verdict by settlement and also agreed on a method to allocate the cost. 
The settlement vanquished the risk of a jury verdict against them. The 
allocation of the cost of settlement would be based on the outcome of the 
coverage suit. If the settled claims were found to be covered by the excess 
policy, the excess underwriters’ payment of the settlement would end the matter. 
The contractual relationship would function as intended as the excess 
underwriters were paid premiums to protect Frank’s Casing from covered risks 
within policy limits. If the settled claims were found not to be covered under 
the excess policy, the excess underwriters would have a contractual right to 
seek reimbursement of the settlement payment. The Court agrees that the parties 
reserved the coverage question but steadfastly ignores both the fact that 
Frank’s Casing lost on the issue reserved (on which the parties hinged the 
excess underwriters’ right to seek reimbursement) and the implications of that 
determination. By the terms of the parties’ arrangement during trial, there 
arose a right to reimbursement.
            
The Court concludes that no such agreement was reached or can be implied 
in fact but nevertheless decides that Frank’s Casing may keep the benefit of the 
offer to pay $7.5 million to settle the case but reject the reimbursement 
condition on the offer. As cited, infra, contract law does not allow the 
Court’s approach of “having my cake and eating it, too.” A deal is a deal, and 
in Texas we 
enforce deals. If Frank’s Casing wanted to reject the condition on 
reimbursement, it should have rejected the $7.5 million payment on its behalf 
and proceeded with trial, made a counteroffer that excluded the condition on 
reimbursement, or objected to the condition on reimbursement before the 
settlement was entered. The Court posits that “the excess underwriters’ 
agreement to accept the settlement in light of Frank’s Casing’s reimbursement 
contest implied the insurers’ consent to Frank’s Casing’s reservation of the 
reimbursement question.” __ S.W.3d __, __. The Court 
misstates some facts and ignores others. First, the excess underwriters did not 
accept the offer, Frank’s Casing did; the excess underwriters made the offer. 
Second, as explained, it is true the parties hinged reimbursement on the answer 
to the coverage question. However, again, ignoring the facts, the Court refuses 
to acknowledge that Frank’s Casing lost its claim of coverage, which gave rise 
to the excess underwriters’ contractual right to reimbursement.
            
The Court asserts “it makes no more sense to say that Frank’s Casing 
impliedly agreed to reimburse the carriers than it would to say that the 
carriers impliedly agreed to waive their coverage position.” Id. at 
__. The Court’s logic falters as it again ignores material facts. The 
excess underwriters’ reservation of the right to reimbursement is an express 
condition in the second February 23rd letter (pursuant to which the parties 
consummated the settlement) and acknowledged in the language of the subsequent 
settlement releases. It defies logic in this context to argue that the carriers 
impliedly waived positions they explicitly reserved in writing when the 
settlement was consummated, explicitly reserved during the hearing in the trial 
court, and then provided for in the settlement documents. The facts of Frank’s 
Casing’s agreement to the settlement are, however, very different. Frank’s 
affirmed on the trial court record that it settled under the terms of the second 
February 23rd letter, affirmatively accepted the $7.5 million check, and raised 
no objection when counsel for the excess underwriters stated, in the same trial 
court hearing on the record, that under the terms of the settlement they 
retained the right to seek reimbursement if the settled claims were later held 
not to be covered. 
            
Frank’s Casing also argues that recognizing the excess underwriters’ 
contractual right to reimbursement is unfair. I do not agree. A trial court 
decided that the claims against Frank’s Casing, which the excess underwriters 
agreed to pay to settle, were not covered claims under the excess policy. 
Frank’s Casing did not appeal that determination, and it is therefore settled. 
Frank’s Casing is not entitled to insurance coverage for risks for which it paid 
no premiums, and the excess underwriters are not obligated to pay for risks they 
did not agree to cover and for which they received no consideration. Should the 
parties have desired to cover such risks, they could have consented to such an 
arrangement by defining the scope of coverage to include the claims at issue and 
agreeing on premiums to be paid for such coverage. But they did not.
            
And neither would I create an equitable right to reimbursement in this 
case. Matagorda County left open a very small window 
for insurers to seek reimbursement of settlement payments for claims later 
determined to be outside policy coverage. The parties should sink or swim on the 
agreements they enter, unless the facts are such that they effect a change in 
the parties’ agreement under traditional principles of contract law, are changed 
by the Legislature, or involve fraud, extortion, mutual mistake of fact, or 
another basis for altering a contract. Deciding this case based on a balancing 
of equitable rights to reimbursement would significantly widen this window but 
would invite insurers and insureds to unnecessarily 
introduce the uncertainty and unpredictability of restitutionary theories into these situations when the 
relationship is one based on contract.
IV.
            
In conclusion, I would hold that absent an agreement that the insured 
reimburse the insurer for paying to settle a claim that is later held not to be 
covered, there is no right to reimbursement of the settlement payment. Such an 
agreement may be included in the insurance policy or by subsequent explicit 
consent or by conduct. 
            
The parties’ contractual relationship should govern an insurer’s right to 
reimbursement. If our analysis of this reimbursement issue were based on the 
common law of contract, determined by the agreements between the parties, rather 
than undefined standards that are foreign to contract law, the law in this area 
would be less perplexing and more certain. Insureds 
and insurers alike benefit from predictability and certainty in the law. 
 
            

                                                                        
________________________________________
                                                                        
J. Dale Wainwright
                                                                        
Justice
 
OPINION 
DELIVERED: February 1, 2008 
 
 







[1] 
The Court has not defined the Matagorda County “clear and unequivocal” 
standard for entering an agreement for reimbursement. It seems to require more 
than a simple preponderance of the evidence; beyond that, we do not know what 
this standard requires. Even evidence supporting a clear and convincing standard 
may be equivocal, but Matagorda County requires more than 
that.

[2] 
Frank’s Casing also complains that it had only a few hours to study the proposed 
settlement from the excess underwriters. This complaint rings hollow as it was 
Frank’s Casing’s February 19th letter that imposed the February 23rd deadline on 
the excess underwriters to settle the case, and Frank’s Casing threatened to 
pursue extra-contractual claims if the deadline was not met.